## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | NO. 05-CR-30145-WDS |
| | ) | |
| DANIEL KLEIN, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion in limine (Doc. 23) to which the government has filed a response (Doc. 24).[1]  Defendant's motion seeks to prevent the government from introducing evidence of defendant's statement made during his arrest by the Mascoutah Police Department.  One of the statements was videotaped.  Defendant asserts that the statements did not constitute a confession and should not be admitted absent defendant testifying.  In addition, the defendant seeks to prevent the government from introducing the statements of Richard Stallins on the grounds that the statements are "improper."

In response, the government asserts that this evidence is admissible pursuant to Fed. R. Evid. 801(d)(2)(A).   The government represents that the evidence will be that the defendant gave two statements to law enforcement officers.  The first was a spontaneous utterance given to Sgt. Kathy Kelsheimer, Mascoutah Police Department, while the defendant was sitting in the Sgt.'s car.  Kelsheimer had asked the defendant his name and the name of the driver, and the

---

[1]The Court has inquired of defendant's counsel if the defendant wished to have the Court hold a suppression hearing on defendant's motion.  Counsel has indicated to the Court that he does not seek a suppression hearing, but will raise these issues at the time that the government seeks to introduce this evidence at trial.  Therefore, this Order is a preliminary ruling  based on the representations of the parties as to what the evidence will be at trial.

defendant stated that the driver had a gun and had him hold it because the driver wanted to take the gun into a police station.   As he was later bring transported to the police department, the defendant added that he would take responsibility for the weapon, even though he knew he was not supposed to have possession of a gun due to his felony conviction.

The second statement was made by defendant to Det. Kenneth Bouas at the Mascoutah Police Department after being read and waiving his *Miranda* rights.  The defendant, when discussing the gun found in his jacket, stated, "It was found on me.  I'll take the charge."  During this statement, the defendant also changed his statement and said that he did not know that the gun was in his pocket.

The government has further represented that it does not intend, at this point to introduce the statements of the driver of the truck, Richard Stallins.

1.      Statements made to Sgt. Kelsheimer

Before conducting a custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), requires that a law enforcement agent advise a suspect of certain familiar rights (to remain silent, to an attorney, and that any statement could be used against him in a court of law). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997)  "The essential element of custodial interrogation is coercion."  *Id*.

To analyze whether *Miranda* warnings were necessary, the Court must determine: (1) whether and when a suspect was in "custody;" and (2) if he was "interrogated."  *Id*.  Custody describes a situation where a suspect "'knows he is speaking with a government agent and does not feel free to end the conversation.'"  *United States v. James*, 113 F.3d 721, 726 (7th Cir. 1997) (quoting *United States v. Martin*, 63 F.3d 1422, 1429 (7th Cir. 1995)).  An interrogation includes

words or acts that police should know would likely elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent").

In establishing a custodial interrogation, a court will not base its decision on the subjective views of either the officers or the suspect. To find an "interrogation," or lack thereof, the court asks whether a reasonable objective observer would have believed that the questions were "reasonably likely to elicit an incriminating response." *Westbrook*, 125 F.3d at 1002. The custody determination "depends on the objective circumstances of the interrogation." *Stansbury v. Cal.*, 511 U.S. 318, 323 (1994). Interrogation includes "express questioning" as well as "any words or actions ... that the police should know are likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301.

Here, based on the government's representations, the volunteered statements made by the defendant to Sgt. Kelsheimer would be admissible against the defendant and his motion in limine on this point is, accordingly, **DENIED**.

2.    Defendant's Post *Miranda* Statements

When a defendant makes a post-arrest statement, the government bears the burden of proving at trial that the statement was made following a voluntary, knowing and intelligent waiver of *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). Whether a person in custody knowingly and voluntarily waives her *Miranda* rights depends upon the totality of the circumstances. *Id*. Courts typically look at such factors as defendant's background and conduct, the duration and conditions of any detention of the defendant, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion. *Culombe v. Conn.*, 367 U.S. 568, 602 (1961).

A confession is voluntary if, in light of the totality of the circumstances, it was "not

secured through psychological and physical intimidation but rather was the product of a rational intellect and a free will." *United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir.1994) (quotations omitted) (*cited in United States v. Ceballos*, 302 F.3d 679, 694 (7th Cir. 2002)). The Seventh Circuit has identified several factors that are relevant to determining voluntariness of a confession, including: " whether the defendant was read his *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was punished physically." *Ceballos*, 302 F.3d at 694, *Slabotney*, 21 F.3d at 750. There simply is nothing in the record before the Court to indicate that the defendant's statement was based on anything other than a knowing and voluntary decision to cooperate with law enforcement after being given his *Miranda* warning.  Therefore, as a preliminary ruling, the Court **FINDS** that defendant's video statement, given after being *Mirandized*, is admissible and the Court **DENIES** defendant's motion in limine on this point.

    3.    <u>Statements of Richard Stallins</u>

In light of the government's representation that it will not be using the statement of Stallins, the defendant's motion in limine on this point is **DENIED** as moot.

<u>**CONCLUSION**</u>

Accordingly, the Court **DENIES** defendant's motion in limine on all grounds raised.

**IT IS SO ORDERED.**

**DATED: June 8, 2006.**

                           **  s/ WILLIAM D. STIEHL   **
                               **DISTRICT JUDGE**